UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVE H. PUGH,

       Plaintiff,

vs.                                 Case No.  3:06-cv-425-J-32MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,[1]

       Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has thoroughly reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") on August 11, 2003, alleging an inability to work beginning January 1, 1990 due to discogenic and degenerative disease in his lower back affecting his capacity to sit, stand and walk. (Tr.

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. See Rule 25(d)(1), Fed.R.Civ.P.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14).

53, 65).  The Social Security Administration ("SSA") denied this application initially and

on reconsideration.  (Tr. 19, 23).  Plaintiff then requested (Tr. 25) and received a

hearing before an Administrative Law Judge ("ALJ") on June 16, 2005 (Tr. 29).  On

September 23, 2005, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr.

12-16).  Plaintiff filed a Request for Review by the Appeals Council (Tr. 8), which was

denied on March 8, 2006 (Tr. 4-6), thus making the ALJ's decision the final decision of

the Commissioner.  Plaintiff timely filed his Complaint in the United States District Court

for the Middle District of Florida on May 9, 2006.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since January 1, 1990 due to discogenic disc

disease, degenerative spondylosis and disc disease, radiculopathy in lower extremities,

failed toe implant, failed joint fusion of toe and metatarsal, reflex sympathetic dystrophy

syndrome of feet and legs, severe pain in back, legs and feet, chronic pain syndrome

and psychological issues including anxiety and depression.  (Tr. 53, 55, 56, 60, 65, 512,

515, 548, 550)

### B.     <u>Summary of Evidence Before the ALJ</u>

Plaintiff was forty-nine years of age on the date the ALJ's decision was issued.

(Tr. 16, 616).  He completed twelve years of school.  (Tr. 617).  Plaintiff has past

relevant work experience driving trucks at a land fill and serving in the United States

Navy as a boatswain mate, tug master, crane operator, rigger, and Captain.  (Tr. 54,

617).  Plaintiff's relevant medical history is discussed below.

-2-

By way of summary, Plaintiff testified he was honorably discharged from the United States Navy in 1989 because of inability to work due to his medical condition after sustaining injuries on a ship.  (Tr. 53-54, 456, 620-21).  Plaintiff was diagnosed with degenerative joint disease, metatarsophalangeal joint fusion with subsequent reflex sympathetic dystrophy in the right foot, and mechanical low back pain with possible mild herniated nucleus pulposus at L5-S1.  (Tr. 109-110).

On February 10, 1989, a Naval Hospital Medical Board Report described findings from an outpatient evaluation of Plaintiff's condition, health records and history (systemic, social and familial).  The Medical Board noted Plaintiff had "required extremely high doses of narcotic medication postoperatively to control his [postoperative] pain and [was] still having significant discomfort and hypersensitivity secondary to his reflex sympathetic dystrophy."  (Tr. 109-12).  Plaintiff was "being taken off narcotic medications" and was on anti-inflammatories.  (Tr. 110).  Plaintiff had declined lumbar sympathetic block treatment and was opting instead for physical therapy.  Id.  Plaintiff also had low back pain radiating down his left leg.  Id.  On physical examination, Plaintiff was "exquisitely tender to any palpation around the first metatarsophalangeal joint."  Id.

Beginning in 1990, Plaintiff began receiving treatment at the Veterans Administration Outpatient Clinic ("VAOPC") in Jacksonville.  On April 26, 1990, he was diagnosed with back pain radiating down his left leg, and herniated disc at L5-S1.  (Tr. 572).  Plaintiff worked as a truck driver in a land fill for approximately three months -- until August of 1990 -- when he had to quit because of medical problems with his back,

legs, and right foot.  (Tr. 53-54, 617).  Plaintiff contends his effort as a truck driver should be recognized as an unsuccessful work attempt and did not amount to substantial gainful activity, pursuant to SSR 84-25.  (Tr. 88, 449).

On July 23, 1990, Plaintiff was seen at the VAOPC for lower back pain, and presented with tenderness and spasms.  (Tr. 573).  The treating physician prescribed rest and Percocet for pain.  Id.  On August 10, 1990, Plaintiff was diagnosed with recurrent sciatica and given Percocet.  (Tr. 571).  On September 13, 1990, Plaintiff was again given Percocet for low back pain.  (Tr. 570).  Between October 11, 1990 and December 12, 1991, VAOPC physicians examined Plaintiff and prescribed pain medication at least fifteen times (an average of more than once per month).  (Tr. 556-59, 562-65).

On January 6, 1992, Plaintiff underwent a lumbar spine MRI at the Gainesville V.A. Medical Center, and the reading radiologist observed:

1.  Dehydrated L3-4 and L4-5 discs.
2.  Left lateral herniated nucleus pulposus at the L4-5 level.
3.  Central extradural defect at the L4-5 level, likely representing osteophytes; however, a focal HNP in this region can not be entirely excluded. Recommend CT examination for further study.

(Tr. 553).  On January 17, 1992, Plaintiff was seen by a VAOPC physician to review his MRI results, at which time Plaintiff declined surgery and elected to attend physical therapy.  (Tr. 551-52).  On February 4, 1992, Plaintiff was seen at the VAOPC for back pain and was scheduled to have a back brace fitted.  (Tr. 550).  The physician

prescribed Diazepam, noting Plaintiff had adjustment disorder and anxiety caused by a combination of "bad family problems" and "constant pain."  Id.

On February 13, 1992, Plaintiff reported to the VAOPC with pain in his right rib cage from an injury sustained earlier that week.  Id.  On March 26, 1992, Plaintiff presented with a "more anxious" affect and "more back spasms" and was prescribed a refill of Diazepam for adjustment disorder.  (Tr. 548).  On May 24, 1993, a VAOPC physician noted Plaintiff had chronic low back pain radiating down his right leg, observed some range of motion loss, and diagnosed Plaintiff with chronic pain syndrome and degenerative disc disease.  (Tr. 517).  Between July 26, 1993 and June 12, 1995, Plaintiff was examined at the VAOPC on a monthly basis for numerous physical and mental conditions including chronic pain syndrome, foot and back problems, insomnia, anxiety and depression, and physicians consistently prescribed and refilled Plaintiff's medications.  (Tr. 478-516).

On February 8, 1994, Plaintiff underwent a lumbar spine MRI that showed spinal:

> stenosis . . . with diffuse disc bulge and osteohpyte comprising a "hard disc" infringing on the spinal canal . . . ligamentum flavum thickening [and] facetal hypertrophy which all appears degenerative and may in fact represent post traumatic degenerative change.

(Tr. 505).  On August 4, 1995, Plaintiff underwent an additional lumbar spine MRI that indicated "[p]ersistent spinal stenosis at the L4-5 level as was noted previously with mild posterolateral disc bulge which may be affecting the L4 nerve root."  (Tr. 474).

At the hearing, Plaintiff testified that prior to his date last insured ("DLI") of September 30, 1995, his abilities to sit, stand and walk were extremely limited.  (Tr.

618).  Plaintiff stated "I spent most of my days and nights in a recliner.  Just like I do

now."  Id.  Plaintiff testified that in May or June of 1995, after waking up with paralysis

on his left side, he began using a prescribed wheelchair.  Id.  Plaintiff described

swelling, pain, and gripping problems with his upper extremities that rendered use of a

cane or wheelchair difficult.  (Tr. 618-19).  Plaintiff testified his worst pain was in his

lower back, legs, and feet and stated he had problems with bending, stooping, and

kneeling.  (Tr. 619).  Plaintiff also testified that he had problems with short-term

memory, holding a book while reading, and reading comprehension.  Id.  Plaintiff stated

he was unable to do any work around the house and when pressed, opined "I guess I

could fold the socks."  Id.

## C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than twelve months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not

have any impairment or combination of impairments which significantly limit his physical

or mental ability to do basic work activities, then he does not have a severe impairment

and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent

him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if

a claimant's impairments (considering his residual functional capacity, age, education,

and past work) prevent him from doing other work that exists in the national economy,

then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  Bowen v.

Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability

requirements of the Social Security Act but was only insured for benefits through

September 30, 1995.  (Tr. 13, 15).  At step one, the ALJ found Plaintiff had not engaged

in substantial gainful activity since his alleged onset date, January 1, 1990.  (Tr. 15).  At

step two, the ALJ determined Plaintiff "currently suffers debilitating pain from reflex

sympathetic dystrophy and back pain secondary to degenerative disc disease" and that

there was "evidence of underlying impairment that could reasonably be expected to

cause some degree of most of the symptomatology alleged on or before the expiration

of his date last insured of September 30, 1995."  (Tr. 13).  The ALJ found these

impairments "'severe' within the meaning of the Regulations, but not 'severe' enough to

meet or medically equal, either singly or in combination to one of the impairments listed

in Appendix 1, Subpart P, Regulation No. 4."  (Tr. 15).

The ALJ found Plaintiff "retained the residual functional capacity to lift and carry a

maximum of 10 pounds, stand and/or walk 2 to 4 hours during an 8-hour workday, and

sit at least 6 hours during an 8-hour workday."  (Tr. 14).  In making this determination,

the ALJ asserted that Plaintiff's testimony regarding his limitations was not entirely

credible.  (Tr. 13, 15).  At step four, the ALJ determined Plaintiff could not perform any

of his past relevant work.  (Tr. 4).  At step five, based on Plaintiff's age, education, work

experience, and exertional capacity to perform a full range of sedentary work, the ALJ

used the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations.

(Tr. 14).  The ALJ asserted that because "all of the criteria of a Medical-Vocational Rule

were met, the existence of occupations in the national economy [was] met by

administrative notice."  (Tr. 14-16).  Accordingly, the ALJ found Plaintiff was not

disabled within the meaning of the Social Security Act.  (Tr. 15-16).

## III.    STANDARDS OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive

if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more

than a scintilla – that is, the evidence must do more than merely create a suspicion of

the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d

1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir.

1982) and Richardson, 402 U.S. at 401).  However, the Court engages in plenary

review of the Commissioner's application of legal principles, and failure to apply the

correct legal standard is grounds for reversal.  Foote v. Chater, 67 F.3d at 1558 (citing

Swindle v. Sullivan, 914 F.2d 222, 225 (11th Cir. 1990) and Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). However, an administrative decision which focuses on one aspect of the evidence while disregarding other contrary evidence is not based on substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.   ANALYSIS

Plaintiff argues several issues on appeal.[3]  First, Plaintiff argues the ALJ failed to develop a full and fair record and properly weigh the evidence. (Doc. 11, pp.6-9, 16-18). Second, Plaintiff argues the ALJ erred in evaluating Plaintiff's credibility by failing to provide explicit and adequate reasons based upon substantial evidence for rejecting Plaintiff's allegations of disabling pain and other symptoms. Id. at 15-18. Third, Plaintiff argues the ALJ erred in concluding Plaintiff could perform the full range of sedentary

---

[3] The Court addresses Plaintiff's arguments in a different order than that addressed by Plaintiff in his memorandum. (Doc. 11).

work. Id. at 6-13.  Finally, Plaintiff claims the ALJ improperly relied upon the Medical-

Vocational guidelines to demonstrate other work Plaintiff could perform.  Id. at 14-15.

The Court will address each of these arguments.

**A.**   **Whether the ALJ erred in discharging his duties to develop a full and fair record and in failing to properly weigh the evidence.**

The ALJ is bound by duties to develop the record, elicit testimony from

witnesses, and weigh the evidence.  Because "Social Security proceedings are

inquisitorial rather than adversarial [i]t is the ALJ's duty to investigate the facts and

develop the arguments both for and against granting benefits."  Sims v. Apfel, 530 U.S.

103, 110-11 (2000) (citing Richardson v. Perales, 402 U.S. 389, 399 (2000) ("The

hearing examiner shall inquire fully into the matters at issue and shall receive into

evidence the testimony of witnesses and any documents which are relevant and

material to such matters.")); see also Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir.

1997) (finding the ALJ has a "basic obligation to develop a full and fair record").  Also,

the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all

the relevant facts."  Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982).

The Eleventh Circuit has explained that a reviewing court cannot conduct a

review that is both limited and meaningful if the ALJ does not state with sufficient clarity

"the weight he accords to each item of impairment evidence and the reasons for his

decision to accept or reject that evidence."  Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th

Cir. 1990); see also Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985).  Accordingly,

the ALJ "should state the weight he accords to each item of impairment evidence and

the reasons for his decision to accept or reject that evidence, including all testimony presented." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990).  The ALJ cannot satisfy this requirement by merely stating that he carefully considered all the testimony and exhibits.  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  If the ALJ rejects Plaintiff's testimony based on credibility findings, then the ALJ must "explicitly state as much [with] clear articulation of both fact and law." Owens v. Heckler, 748 F.2d 1511, 1514-15 (11th Cir. 1984).  Failure to properly comply with this requirement is grounds for remand of the case if "credibility is critical to the outcome of the case." Id. at 1514.

Furthermore, when the ALJ does not properly weigh the evidence, the Eleventh Circuit has refused to affirm an ALJ's conclusory decision even where some post hoc rationale might have supported the ALJ's conclusion.  Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282, 1287 (11th Cir. 2004) (finding that where "the ALJ never mentioned these state physicians anywhere in his ruling," the content of two state agency medical consultant reports could not justify the ALJ having decided an impairment did not meet listing requirements); Owens v. Heckler, 748 F.2d at 1516 (declining to affirm "simply because some rationale might have supported the ALJ's conclusion").  Accordingly, the Commissioner cannot rehabilitate deficiencies in the ALJ's decision merely by asserting post hoc justification of the ALJ's conclusory findings.

In this case, the ALJ offered only conclusory findings about Plaintiff's physical impairments, pain symptoms, and residual functional capacity.  Although Plaintiff

submitted more than 300 pages of medical records, at least 100 of which preceded Plaintiff's date last insured ("DLI"), the ALJ failed to cite a single medical record notation, treating physician opinion, consulting physician opinion, comprehensive Naval Hospital Medical Board Report, or even the service agency physician assessments of Plaintiff's residual functional capacity ("RFC").  The undersigned finds the arguments and examples offered in the Memorandum in Support of the Commissioner's Decision cannot rehabilitate the ALJ's failure to present and weigh such evidence.  On remand, the undersigned instructs the ALJ to state with sufficient clarity the weight he affords to each piece of impairment evidence, and the reasons for his decision to accept or reject that evidence.

**B.**     **Whether the ALJ erred in failing to properly evaluate Plaintiff's allegations of disabling pain and other symptoms.**

Pain is a non-exertional impairment.  Foote, 67 F.3d at 1559.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

-12-

Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability. Foote, 67 F.3d at 1561.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96-7p.

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005) (holding that district court reversal constituted reversible error where ALJ considered claimant's "activities of daily living, the frequency of his symptoms, and the types and dosages of his medications" and "adequately explained his reasons" for "conclud[ing] that [the claimant]'s subjective complaints were inconsistent with his testimony and the medical record.")  However, the ALJ must give proper weight to the claimant's subjective complaints, pain and symptoms, particularly when bolstered by the notes and conduct of the treating physicians.  Spivey v. Apfel, 133 F. Supp. 2d. 1292, 1303 (M.D. Fla. 2001) (holding that the ALJ failed to give proper weight to the claimant's subjective complaints, pain and symptoms, because the treating physician documented the claimant's history of pain relating to her hands and prescribed pain medication).

In this case, the ALJ did not specifically reference the Eleventh Circuit pain standard, however, it appears he conducted the correct analysis for pain and subjective complaints.  Specifically, the ALJ found evidence that Plaintiff "currently suffers debilitating pain." (Tr. 13).  The ALJ then stated he questioned "the severity of the symptoms and the degree of limitations alleged and/or whether the [Plaintiff's] condition was so severe that it could reasonably be expected to preclude the [Plaintiff] from engaging in any substantial gainful activity prior to September 30, 1995."  Id.

Plaintiff claims the ALJ failed to properly explain, based on substantial evidence, his finding that Plaintiff's testimony regarding his pain and ability to work was not credible.  (Doc. 11, pp. 15-18).  Plaintiff alleges the ALJ's credibility finding was not based on substantial evidence because the ALJ disregarded Plaintiff's diagnoses of

-14-

chronic pain disease and reflex sympathetic dystrophy syndrome ("RSDS"), and the manner in which those conditions affected the severity of Plaintiff's pain and the effect of Plaintiff's pain on Plaintiff's "cognition, mood, behavior or motor reaction times." (Id. at 15-17). Additionally, Plaintiff alleges that the ALJ provided only "brief and general conclusions" about Plaintiff's pain testimony without articulating "'specific reasons for questioning [Plaintiff's] credibility.'" (Id. at 11, pp.17-18) (quoting Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987).

Plaintiff testified his abilities to sit, stand, and walk were extremely limited since before his DLI, and further testified to his use of a prescribed wheelchair several months before his DLI because he experienced paralysis on his left side. (Tr. 618). Plaintiff also testified that his activities of daily living were limited by gripping problems  that made using a cane or wheelchair and holding a book difficult, impaired reading comprehension, short-term memory problems, and pain in his lower back, legs, and feet that affected his ability to bend, stoop, and kneel. (Tr. 618-19). Plaintiff stated he was unable to do any work around the house and when pressed, opined "I guess I could fold the socks." (Tr. 619).

The undersigned finds the ALJ's decision did not meet the Eleventh Circuit standard because the ALJ did not provide any reasons for questioning and discrediting Plaintiff's credibility. Instead, the ALJ merely included a conclusory statement finding "there is evidence of underlying impairment . . . [h]owever, there are questions about the severity of the symptoms and the degree of limitations alleged and/or whether [Plaintiff's] condition was so severe that it could reasonably be expected to preclude [Plaintiff] from engaging in any substantial gainful activity prior to [his DLI]." (Tr. 13). By

questioning the severity of Plaintiff's pain without stating explicit reasons for discrediting Plaintiff's testimony, the ALJ implicitly recognized Plaintiff's pain may have been so severe as to preclude him from working.  Accordingly, the ALJ should have inquired further into Plaintiff's pain during the hearing.  If the ALJ determined Plaintiff's testimony as to his pain was no longer questionable, but should in fact be discredited, then he should have articulated specific and adequate reasons, supported by substantial evidence, that justified a decision not to afford proper weight to Plaintiff's subjective complaints and medical history.

Even if the undersigned credited the Commissioner's post hoc rationale that Plaintiff lacked credibility because Plaintiff was allegedly addicted to narcotic pain medication and was exaggerating his symptoms, the undersigned finds such rationale unsupported by substantial evidence in the record.  Citing a Social Security Ruling, Plaintiff argues that his RSDS diagnosis can cause "reported pain [that] is often out of proportion to the severity of the precipitating injury."  SSR 03-2p.  Furthermore, despite some comments in the medical records advising Plaintiff to be evaluated by pain management before Plaintiff's VA treating physicians refilled his pain medication, the physicians continued prescribing and refilling Plaintiff's medication throughout the five-year period preceding Plaintiff's DLI.  Consequently, the ALJ should have engaged in further inquiry to determine whether the comments recommending pain management analysis were merely attributable to standard protocol.

In sum, the reasons offered by the ALJ for discrediting Plaintiff's testimony are neither specific nor adequately supported by substantial evidence because the ALJ failed to accurately and completely report and weigh Plaintiff's medical history, available

treatment options, and course of treatment.  As such, on remand the ALJ should re-evaluate Plaintiff's credibility.  If on remand the ALJ decides to discredit Plaintiff's testimony as to his pain, the ALJ should state specific reasons, supported by substantial evidence, for doing so.

**C.      Whether the ALJ erred in concluding Plaintiff could perform the full range of sedentary work.**

Plaintiff argues the ALJ erred in finding that on or before his DLI, Plaintiff retained the residual functional capacity to perform work at the sedentary level of exertion.  The RFC is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to work despite his impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ must formulate an RFC based upon proper consideration of all medical evidence and assign "substantial or considerable" weight to treating physician opinions, or give explicit and adequate reasons supported by substantial evidence of "good cause" for not doing so.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003) (quoting Lewis v. Callahan, 125 F.3d at 1440) (internal quotations omitted).  Federal regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [Plaintiff's] symptoms, diagnosis and prognosis, what [Plaintiff] can still do despite impairment(s), and [Plaintiff's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  The Eleventh Circuit concluded:

> "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.

Id. at 1240-41.

In this case, the ALJ found Plaintiff "retained the residual functional capacity to lift and carry a maximum of 10 pounds, stand and/or walk 2 to 4 hours during an 8-hour workday, and sit at least 6 hours during an 8-hour workday." (Tr. 14). In adopting Plaintiff's RFC, Plaintiff argues the ALJ improperly failed to summarize or reference any of Plaintiff's medical evidence, provided no reasoning as to whether or to what extent he relied on or chose to ignore such evidence to reach his determination, and erred by failing to consider the combined weight of Plaintiff's diagnosed impairments when determining Plaintiff's RFC. (Doc. 11, pp.6-8, 13). Specifically, Plaintiff argues the ALJ erred in ignoring Plaintiff's diagnoses of chronic pain syndrome and anxiety/depression. Id. at 6-7, 9-13, (Tr. 448-49).

In a January 1996 VA Medical Center Compensation and Pension Exam Report, VA physicians diagnosed Plaintiff with low back pain, left leg pain, possible herniated nucleus pulposus, degenerative disc changes indicated by MRI's from 1992 and August 1995, and chronic pain syndrome. (Tr. 451). The report described pain and functional limitations including: "daily pain;" caused by a history of discogenic disease that is "[a]ggravated by prolonged sitting [and] prolonged standing and occasionally very severe with inability to move;" history of chronic migraines that occur three times weekly and for which "[t]reatment consists of medication, rest, and darkened room;" and "halting gait with some difficulty in walking and dependen[ce] on assistance of cane." (Tr. 457-58, 460).

Based upon review of the entire record, the undersigned finds the VA Medical Center Compensation and Pension Exam Report, although dated several months after

Plaintiff's DLI, may in fact indicate that Plaintiff's symptoms preceded his DLI.  (Doc. 11,

pp.10-13, Tr. 474-572).  The existence of such medical data at least appears to

contradict the ALJ's assertion that "there is no evidence that his impairments were

severe enough to render him totally disabled prior to the expiration of his date last

insured."  (Tr. 14).  Additionally, if such medical evidence is uncontroverted, Plaintiff's

limitations, particularly the restriction on "prolonged sitting," would likely render Plaintiff

unable to perform a full-range of sedentary work, which requires a capacity to sit for six

hours of an eight-hour work day.  SSR 96-8p.

Accordingly, the undersigned instructs the ALJ, on remand, to assign proper

weight to the opinions of Plaintiff's treating physicians or to give explicit and adequate

reasons supported by substantial evidence for not doing so, and to formulate an RFC

based upon proper consideration of all medical evidence.

> **D.     Whether the ALJ improperly relied on the Medical-Vocational
>     Guidelines to determine Plaintiff could perform other work.**

Plaintiff argues that the ALJ erred in failing to use a Vocational Expert at step

five, rather than relying solely on the Medical-Vocational Guidelines.  20 C.F.R. pt. 404,

subpt. P, app. II.  Once Plaintiff meets his burden of proof to establish that he is unable

to perform his past relevant work, the burden shifts to the Commissioner to prove that

Plaintiff is capable – based upon age, education, work experience and RFC – of

engaging in another kind of substantial gainful employment that exists in the national

economy.  42 U.S.C. § 423(d)(2)(A).  The Eleventh Circuit has held that "'exclusive

reliance on the grids is not appropriate either when [the] claimant is unable to perform a

full range of work at a given residual functional level or when a claimant has non-

exertional impairments that significantly limit basic work skills.'" Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) (quoting Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985)).

The ALJ has a duty to consult a Vocational Expert ("VE") when Plaintiff "cannot perform a full range of unlimited types of work at the sedentary level given [his] exertional limitations," or when Plaintiff has non-exertional limitations that "significantly limit [his] basic work skill at the sedentary work level." Phillips v. Barnhart, 357 F.3d at 1242-43. Moreover, the Eleventh Circuit has held, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.'" Id. at 1244 (quoting Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995 (internal quotation marks and citations omitted)). Non-exertional impairments include: pain; difficulty functioning caused by nervousness, anxiety, or depression; and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. § 416.969a(c)(1).

Here, Plaintiff argues the ALJ erroneously ignored substantial medical evidence that indicated Plaintiff had an impaired ability to sit and also had non-exertional impairments, including pain and anxiety, that were severe enough to preclude a full range of work at the sedentary level. (Doc. 11, pp. 14-15). Therefore, Plaintiff alleges the ALJ "should not have rested [his conclusion at step five] upon a mechanistic application of a grid rule." Id. at 5, 14-15.

Although the ALJ stated that Plaintiff's "medical evidence indicate[d] reflex sympathetic dystrophy and degenerative disk disease," the ALJ asserted that assigning

a sedentary work RFC prior to Plaintiff's DLI was "primarily due to [Plaintiff's] foot problems." (Tr. 13). The undersigned notes that such an assessment is contradicted by medical records spanning from 1990-95 that document diagnoses and prescriptions for numerous non-exertional conditions including severe low back pain, chronic pain syndrome, anxiety, and depression. (Tr. 482-83, 489, 495-96, 500, 503, 509-13, 548, 550, 563, 568-72). The ALJ failed to mention these diagnoses in his decision. Therefore the undersigned finds the ALJ improperly discounted Plaintiff's non-exertional impairments and instructs the ALJ, on remand, to properly consider all evidence of non-exertional impairments. Moreover, the ALJ should use a vocational expert if he determines Plaintiff's non-exertional impairments significantly limit Plaintiff's activities.

## V.    CONCLUSION

For the foregoing reasons, the undersigned believes the Commissioner's decision is not supported by substantial evidence and is therefore **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ shall (1) develop a full and fair record and properly weigh the evidence of Plaintiff's physical and mental limitations, (2) assess Plaintiff's pain and credibility, and if he rejects Plaintiff's allegations, provide explicit and adequate reasons based upon substantial evidence for doing so, (3) assign proper weight to the opinions of Plaintiff's treating physicians or give explicit and adequate reasons supported by substantial evidence for not doing so, (4) reconsider Plaintiff's combination of impairments to determine Plaintiff's residual functional capacity, and if he finds Plaintiff is incapable of performing the full range of sedentary work, propound a hypothetical to a vocational expert that clearly sets out all of Plaintiff's limitations, and (5) conduct any other proceedings

deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, this  11th  day of May, 2007.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record